UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-00454-WYD

ELYSE A. BOWERS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.  INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's December 18, 2003 application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383c ["the Act"]. Plaintiff claimed that she had been disabled since February 25, 2003 due to extreme fatigue, fibromyalgia, panic-anxiety and depression, Sjogren's syndrome and other issues. (Transcript ["Tr."] 72.)

The Colorado Disability Determination Services ["DDS"] denied Plaintiff's claims at the initial determination stage (Tr. 45-48, 443-47).[1] After a hearing (*id*. 462-99), the Administrative Law Judge ["ALJ"] determined on June 30, 2006, that Plaintiff was not

---

[1] Plaintiff's application was selected to be part of the pilot project under 20 C.F.R. § 404.906 (2006), whereby after the initial determination, the claim immediately proceeded to an administrative hearing. No request for reconsideration was required.

disabled because she retained the residual functional capacity ["RFC"] to perform light work that did not involve direct public contact, and jobs existed in significant numbers that would accommodate her limitations. (*Id.* 27-28.) The Appeals Council declined review of the ALJ's determination, making it the Commissioner's final decision for purposes of judicial review. (*Id.* 6-8.) *See* 20 CFR § 404.981 (2006).

II.     THE UNDERLYING DECISIONS

    A.     The ALJ's Decision

The ALJ noted that Plaintiff was age 48 at the time of the hearing (a younger individual within the meaning of the Act), was born October 2, 1957, and had a high school education. (Tr. 27.) The issue of transferable skills was not relevant to the determination of disability. (*Id.*) At step one of the sequential evaluation the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2007, and had not engaged in substantial gainful activity since her alleged onset of disability. (*Id.* at 20.)

At step two of the sequential evaluation, the ALJ found that the claimant had the following severe impairments: "mood disorder not otherwise specified ("NOS"), panic disorder without agoraphobia, personality disorder, fibromyalgia, mild osteoarthritis of the right shoulder, and Sjogren's syndrome.[2] (Tr. at 20.)

---

[2]  Sjögren syndrome keratoconjunctivitis sicca, dryness of mucous membranes, telangiectasias or purpuric spots on the face, and bilateral parotid enlargement; seen in menopausal women and often associated with rheumatoid arthritis, Raynaud phenomenon, and dental caries; there are changes in the lacrimal and salivary glands resembling those of Mikulicz disease. Syn: Gougerot-Sjögren disease, Sjögren disease, sicca syndrome. Stedman's Electronic Medical Dictionary, Version 6.0

At the third step of the evaluation, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of an impairment in the Listings, so as to be presumptively disabling. (Tr. 21.) The ALJ considered sections 12.04, 12.06, 12.08, 1.00B(2)(c), and 1.02B of the Listings. (*Id.*)

As to Plaintiff's RFC, the ALJ found that Plaintiff could:

> lift/carry 10 pounds frequently and 20 pounds occasionally; sit for two hours at a time and a total of six hours in an eight-hour workday; stand/walk for a total of two hours in an eight-hour workday with postural shifts that do not require leave of the work station; no overhead reaching; frequent below-shoulder reaching, handling, fingering and feeling; occasionally climb stairs, but never climb ladders or scaffolds; no crawling; occasionally balance, stoop, kneel and crouch; no exposure to temperature extremes or dangerous machinery; can perform work that can be learned in one month and up to and including three months; and no direct public contact.

(Tr. at 21.) The ALJ stated in making this RFC that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.*)

The ALJ found that this RFC is consistent with and supported by the objective medical signs and findings and the opinion of the examining psychologist in exhibit 16F (one time examining psychologist, Frederick G. Leidal Psy.D., Tr. 431-441). (Tr. 27.) He further stated that the RFC "is also largely consistent with the opinion of the examining physician in exhibit 15F (one time examining physician Amy Garwood MD, Tr. 420-430) and that of the state agency medical consultant in exhibit 2F (non-examining non-treating E. Ryan MD, Tr. 176-179). (*Id.*) The ALJ found the "state agency opinion that the claimant has no 'severe' physical impairment unpersuasive and

accord[ed it] no weight because it is markedly inconsistent with the medical evidence, discussed above, which shows that the claimant's physical impairments impose more than a minimal effect on her ability to perform basic work activities." (*Id.*)

As to Plaintiff's credibility, the ALJ considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 26.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a: (1) Personal recruiter, Dictionary of Occupational Titles ["DOT"] 166.267-038 and/or (2) Employment agency manager, DOT 187.167-098. (Tr. at 27.) He found, consistent with the testimony of the vocational expert ["VE"], that the skilled requirements of these jobs are not consistent with the restrictions in the RFC. (*Id.*)

Thus, the ALJ was required at step five to determine if there are a significant number of other jobs in the economy that Plaintiff can perform. The ALJ found that Plaintiff could not perform a full range of light work. (Tr. 28.) With the assistance of the VE, the ALJ found that Plaintiff could perform other work such as:

1. Assembler, small parts, DOT 706.684-022, unskilled, light work, 1500 positions in Colorado and 182,000 in the United States. The VE then reduced the above numbers by 50% based upon the sitting requirement, to 750 positions in Colorado and 91,000 in the United States;

2. Final assembler, DOT 713.687-108, unskilled, sedentary, 245 positions in Colorado and 29,000 in the United States; and

     3.     Lens inserter DOT 713.687-026, unskilled, sedentary, 150 positions in Colorado and 17,470 in the United States.

The VE further opined that the above three jobs were consistent with the information contained in the DOT. (Tr. 28.) The ALJ accepted the testimony of the VE and found, based on Plaintiff's vocational profile, that she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.*) Thus, the ALJ found that Plaintiff was not disabled. I also note that in response to the ALJ's questioning the VE opined that the three (3) jobs identified above would be eliminated and no other jobs would be available: (1) if handling, fingering and feeling were limited to occasionally (*id.* at 496); or (2) if Plaintiff required one additional break in the morning and afternoon. (*Id.* at 497.)

III.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other

evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

B. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

My review of the record reveals a number of errors that require the Commissioner's decision to be reversed and remanded for further factfinding.

1. <u>Whether the ALJ Failed to Properly Evaluate the Opinions of Rheumatologist, Amy Garwood MD, Concerning the Severity of Claimant's Physical Limitations</u>

At the request of the Commissioner Plaintiff underwent a one time consultative examination by Rheumatologist Dr. Amy Garwood. Dr. Garwood opined:

"IMPRESSION

1. Fibromyalgia. She is clearly tender on exam. She does not want to use her right arm because it is so sore from writing one-and-a-half pages of answers. She is tender in most areas when examined. She describes profound sleep disturbances. She cannot sleep often at night, but then sleeps during the day. This is certainly part of fibromyalgia and is likely contributing to her tenderness. She is on medications to help both tenderness and sleep, but has had a decline in function over the last decade.

2. Anxiety and panic. She shows clear evidence of anxiety on exam today. She cannot perform concentration exercises such as serial 7's. She looks to her husband for much of the history and seems to lack confidence in her own answers. He does interject frequently and interrupts her. She described kept awake by profound panic. I think her psychiatric disorders are clearly part of her generalized decline. She has been on multiple

> medications in the past both described by her and through the review of the extensive medical records. I do not think her symptoms are in full control based on my exam today. I think these disturbances form the biggest limitations of her productive employment.
>
> 3. This is part of both her sleep disturbance and fibromyalgia as well as perhaps her psychiatric problems. I think these are all combined, and based on my extended interview with her, she appears limited in her ability to focus and concentrate. She has functioned at a high level in the past and was an entrepreneur with her own employment agency. I do not see how she could do this with her current state of mental and physical health.

(Tr. 423.)

Dr. Garwood further opined that Plaintiff could: stand for 1 hour at a time for a total of 1 hour in an 8 hour work day; walk for 30 minutes at a time for a total of 1 hour in an 8 hour work day; reach occasionally in all other directions than overhead with her right or left hand; handle occasionally with her right or left hand; finger occasionally with her right or left hand; and feel occasionally with her right or left hand. (Tr. at 425-26.) Dr. Garwood states that in addition to the examination, she reviewed extensive records (*id.* 421) and indicated that per the medical records there was also mild sensorineural hearing loss and tinnitus and blindness in Plaintiff's left eye. (*Id.* 427). Dr. Garwood further opined limitations in exposure to only occasional (up to 1/3): unprotected heights; operating a motor vehicle; humidity and wetness; dust, odors, fumes, pulmonary irritants, and vibrations. (*Id.* at 428).

The ALJ found Dr. Garwood's opinion not fully persuasive and accorded it only some weight because its limitations on use of the upper extremities and operation of foot controls were not supported by the exam findings. The findings the

ALJ relied on showed normal joints throughout, full range of motion of the extremities other than some reduced range of motion of the right shoulder, intact strength in the extremities other than "mildly" limited strength in the right upper extremity, normal grip strength, and normal gait. (Tr. 26.) Otherwise, the ALJ found that the remainder of Dr. Garwood's opinion was persuasive because it is supported by the detailed exam findings and is consistent with the other objective medical evidence of record. (*Id.*)

In determining physical limitations, the ALJ gave no weight to the State Agency Doctor, leaving only the opinions of Dr. Garwood to supply the medical evidence regarding physical limitations. Plaintiff argues that it was improper for the ALJ to reject some of the limitations imposed by Dr. Garwood. She asserts that he substituted his own opinion which was not supported by medical evidence. Specifically, Dr. Garwood opined that Plaintiff should only occasionally engage in reaching other than overhead, handling. fingering, and pushing/pulling. (Tr. at 426.) The ALJ found that Plaintiff could frequently reach other than overhead, handle and finger and imposed no restrictions on pushing/pulling. (*Id.* at 21.) Dr. Garwood also opined that Plaintiff could stand hour for a total of 1 hour in an 8 hour work day and walk 30 minutes at a time for a total of 1 hour in an 8 hour work day. (*Id.* at 426.) The ALJ found that Plaintiff could stand/walk for a total of 2 hours in an 8 hour day with postural shifts. (*Id.* at 21.)

I agree with Plaintiff that an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. *See, e.g., Haga v. Astrue*, 482 F 3d 1205, 1208 (10th Cir. 2007)*; Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir 2004). While the ALJ cited to portions of

the record from Dr. Garwood that supported his decision to reject certain of her findings, he improperly discounted those that supported Dr. Garwood's findings.

For example, Dr. Garwood noted that Plaintiff's primary care physician had found in December 2005 that she had "documented limitations in her right rotator cuff and prescribed conservative treatment with nonsteroidal antiinflammatories, rest and ice." (Tr 422.) Further, she noted in her exam that Plaintiff's "shoulders are a little irritable", abduction of right shoulder limited to 95 degrees and Plaintiff complains of "significant tenderness when I try to actively rotate her shoulder", she has clear evidence of many tender points including her trapezius (shoulder muscles), trochanter (upper extremity near femur), and anterior forearms, strength is mildly limited in the right upper extremity (*id.* 422); she is clearly tender on exam and is limited due to pain and tenderness, she complains of soreness and does not want to use her right arm because it is so sore from completing pages of forms; and she has profound sleep disturbance which is part of the fibromyalgia and contributes to her tenderness and decline in function over the last decade (*id.* 423).

The above evidence could arguably support Dr. Garwood's findings regarding limitations on use of the upper extremities and operation of foot controls and was improperly discounted by the ALJ. Further, there was no other evidence in the record that supported the ALJ's findings. The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own*

*credibility judgments, speculation, or lay opinion.'" Langley v. Barnhart*, 373 F.3d 1116, 1121(10th Cir. 2004) (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Finally, if the ALJ had questions about Dr. Garwood's opinion or felt the medical evidence was inadequate to justify the impairments she imposed, the ALJ should have contacted the treating physician to make further inquiry. *McGoffin*, 288 F.3d at 1252 (citing 20 C.F.R. § 404.1512(e)(1) (2001)). This was particularly important in this case as the vocational expert opined that if Dr. Garwood's limitation of occasional reaching, handling, and fingering were used, then there would be no jobs that Plaintiff could perform. (Tr. at 496-497.)

Based upon the errors described above, I find that this case must be remanded so that Dr. Garwood's opinions can be properly evaluated.

> 2. <u>Whether the ALJ Failed to Properly Evaluate the Opinion of Treating Psychologist Noah Reaven Ph.D, Concerning the Severity of Plaintiff's Mental Impairments</u>

Treating psychologist Dr. Noah Reaven completed a medical source statement dated December 1, 2004, which appears in the record at pages 261-267. Dr. Reaven's longitudinal medical records are at pages 182-255, 271-362, 363-402, 403-406, 407-411, 412-413 and 414-419. Dr. Reaven opined a diagnosis under Axis I of Major Depression, Anxiety Disorder NOS and under Axis III of Fibromyalgia. He also opined that Plaintiff had a GAF of 50. (Tr. at 261.)[3] Dr. Reaven gave Plaintiff a guarded

---

[3] "'The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.'" *Langley*, 373 F.3d at 1122 n. 3. "A GAF score between 41 and 50 indicates "[s]erious symptoms" or "serious impairment in social, occupational, or

prognosis and noted that fibromyalgia is a chronic condition. (*Id.*) He identified a number of signs and symptoms of Plaintiff including thoughts of suicide, generalized persistent anxiety, difficulty thinking or concentration, and memory impairment. (*Id.* at 261-62.)

As to specific impairments, Dr. Reaven opined that Plaintiff had a substantial loss of ability to meet several basic work-related activities on a sustained basis including: (1) the ability to understand, remember, and carry out simple instructions; (2) to make judgments that are commensurate with the functions of unskilled work, *i.e.*, simple work-related decisions; (3) to respond appropriately to supervision, co-workers and usual work situations; and (4) to deal with changes in a routine work setting. (Tr. 263.) He also found that the following work related stressors would increase the levels of her impairments: unruly, demanding or disagreeable customers even on an infrequent basis; production demands or quotas; a demand for precision (intolerance of error rates in excess of 5% to 10%); a need to make quick and accurate, independent decisions in problem solving on a consistent basis; and a need to make accurate, independent decisions in problem solving on a consistent basis. (*Id.* at 265.) He also opined that Plaintiff had: (a) moderate restrictions of activities of daily living; (b) moderate difficulties in maintaining social functioning; and (c) moderate difficulties in maintaining concentration, persistence or pace. (*Id.* at 266.) Finally, he noted that he

---

school functioning." *Roybal v. Astrue*, No. 06-4189, 2007 WL 1475276, at *1 n. 3 (10th Cir. 2007) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) (*DSM-IV*).

had insufficient information to respond to certain specific questions about mental abilities and aptitudes needed to do unskilled work. (*Id*. at 264.)

The ALJ rejected all of Dr. Reaven's opinions stating that they are inconsistent with the March 2004 consultative exam of Kipton Freer DO (Tr. 256-259) which the ALJ found "was largely normal other than somewhat decreased delayed recall and concentration" and with the March 2006 exam of Frederick G. Leidal, Psy.D. (*id*. at 431-441) which he found indicates "that the claimant is generally able to perform simple work tasks well and can perform more complex work tasks satisfactorily." (Tr. at 24.) He also found that Dr. Reaven's opinions are not supported by other objective medical evidence in the record; it contrasts with the claimant's previous report of having no suicidal ideation either recently or remotely; and it is not supported by explanation, objective findings, or treatment records from this particular source. (*Id*.)

I find that the ALJ did not properly weigh Dr. Reaven's opinions. Those opinions are based upon Dr. Reaven's long standing treatment with Plaintiff as reflected by the Kaiser medical records. The test for giving controlling weight for a treating psychologist's opinion is: "whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.*

In this case, contrary to the ALJ's finding that Dr. Reaven's opinions were not based on objective findings, I find that there was support in the record for the opinions.

-12-

"A psychological opinion may rest either on observed signs and symptoms or on psychological tests. . .; thus, [a psychologists] observations about a claimant's limitations do constitute specific medical findings." *Washington v. Shalala,* 37 F. 3d 1437, 1441 (10th Cir. 1994); *see also Robinson v. Barnhart,* 366 F. 3d 1078, 1083 (10th Cir 2004). In this case, the opinions of Dr. Reaven were supported by observed signs and symptoms, as noted in the transcript at pages 261 and 262. Further, there are treatment notes that support at least some of these findings. (*See* Tr. at 397, 410). There was also an explanation for Dr. Reaven's findings. For example, Dr. Reaven opined that Plaintiff was unable to work due to "insomnia, diminished concentration, chronic pain, frequent anxiety." (*Id.* at 410.)

    I also find, contrary to the ALJ's findings, that the opinions of Dr. Reaven are actually consistent in large part with the opinions of the two one time consultative examiners Kipton Freer and Frederick Leidal. For example, Dr. Reaven opined an Axis I diagnosis of: major depression and anxiety disorder not otherwise specified. (Tr. at 261). Kipton Freer similarly opined an Axis I diagnosis of: major depression and anxiety disorder not otherwise specified, rule out bipolar mood disorder. (*Id.* 266.) Frederick Leidal opined an Axis I diagnosis of: Mood Disorder not otherwise specified, Psychological Factors Affecting Physical Conditions and Panic Disorder without agoraphobia. He also opined an Axis II diagnosis of Personality disorder as well as an Axis IV diagnosis of Psychosocial stressors; social alienation. (*Id.* 436.) To the extent that the findings of Drs. Freer and Leidal were consistent with the findings of Dr. Reaven, the ALJ improperly rejected them on the basis of inconsistency.

More importantly, Drs. Reaven, Freer and Leidal all opined as to the existence of cognitive limitations and other mental impairments that were improperly disregarded by the ALJ. Turning to other opinions of Dr. Reaven, he opined that Plaintiff was unable to meet the basic mental demands of competitive, remunerative, unskilled work as she had a substantial loss of the four basic mental demands of unskilled work. (Tr. at 263.) This would obviously preclude Plaintiff from working at any job. SSR 96-9p. Dr. Reaven further opined that various work related stressors would increase the level of severity of Claimant's impairments. (Tr. 265.)

Dr. Freer opined from his examination and testing of Plaintiff that she has mood symptoms which "are seriously affected by her chronic pain symptoms and diagnosis of fibromyalgia" and which, without effective treatment, "are likely not to improve or worsen". (*Id.* at 259). He further opined that (1) "[d]aily activities, abilities and social activities are likely seriously affected by the psychiatric pathology suggested by the patient's self-reported symptoms"; (2) Plaintiff had "poor concentration" and (3) "[m]ental functioning decompensation and deterioration would be anticipated without more involved evaluation of the psychiatric illness and suggestive illnesses." (*Id.* at 259.)[4] He opined that Plaintiff had a GAF of 65.[5]

---

[4] "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements . . . . [t]he ALJ cannot reject [a psychiatrist's] opinion solely for the reason that it was based on [the claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the psychiatrist]." *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4 (10th Cir. 2005).

[5] GAF scores between 61 and 70 reflect mild symptoms, with some difficulty in social and occupational functioning. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000).

Dr. Leidal opined that Plaintiff had psychosocial stressors and social alienation, a GAF of 60, and that Plaintiff's "ability to work appears moderately impaired."[6] (Tr. 436.) As to specific work-related impairments, he found moderate impairments in a number of areas including adaptability, sustaining an ordinary routine without supervision, persistence in completing tasks, ability to understand and carry out more detailed instructions, and "the ability to maintain employment, adapt to the work environment and tolerate the stressors of the work environment and complete a normal work day." (*Id.* at 437.) Finally, he found that Plaintiff's ability to understand and comprehend and carry out more complex levels of instruction and direction is markedly impaired. (*Id.*)

I find that the ALJ erred in ignoring these impairments and in misconstruing the opinions to somehow support a finding that Plaintiff's mental impairments did not impact her ability to work. This was error. *Haga*, 482 F 3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . .the ALJ did not state that any evidence conflicted with [a mental health professional's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the mental health professional's] restrictions but not others.").[7] The ALJ also improperly ignored

---

[6] A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." *Roybal*, 2007 WL 1847205, at *1 n . 2.

[7] I also note that to the extent Dr. Reaven's opinions were actually inconsistent with other medical evidence, the ALJ's task was to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Goatcher v. U.S. Dept. of Health & Human*

the GAF findings of the mental health professionals.  *See Givens v. Astrue*, No. 07-5021, 2007 WL 3046302, at *6 (10th Cir. 2007); *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *3-4 (10th Cir. 2005).

Further, the ALJ improperly rejected the moderate limitations found by Dr. Leidal on the basis that "moderate" means that a claimant has more than a slight limitation in a particular area, but the individual can function satisfactorily.  (Tr. 24.)  However, the existence of a moderate impairment is not the same as no impairment at all.  *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).  The ALJ failed to recognize that, or to address why the moderate limitations were not included in the RFC.  Further, he failed to address the marked impairments noted by Dr. Leidal.

The ALJ also did not assess all of Plaintiff's impairments in combination, including those found not to be severe.  *See Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination") (citing 42 U.S.C. § 423(d)(2)(C)).  For example, in addition to the mental impairments there was also evidence in the record of fatigue, a sleep disorder, and chronic pain.  These needed to be properly considered.  Indeed, in a case similar to this one where the plaintiff suffered from fibromyalgia as well as chronic fatigue, migraines or chronic headaches and depression the Tenth Circuit held that the ALJ committed reversible error when he

---

*Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

failed to assess the combined effects they had on the plaintiff's ability to do work-related activities. *Langley*, 373 F.3d at 1124.

Further, as to pain, "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation. . . pain might impose on [Plaintiff's] ability to do. . . work." *Id.*

I also find that the ALJ improperly rejected Dr. Reaven's opinion that Plaintiff is unable to work stating that this is an issue reserved to the Commissioner. While I agree that disability is an issue reserved for the Commissioner, Dr. Reaven's findings on this issue still needed to be considered and weighed. *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. 2002) ("opinions from any medical source on issues reserved to the Commissioner must never be ignored . . . . The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability. . . .").

Finally as to Dr. Reaven, I agree with Plaintiff that even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject their opinions outright. *Langley*, 373 F.3d at 1120. Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision does not reflect that he

gave deference to Dr. Reaven's findings and weighed them, or that he gave "any consideration of what lesser weight the opinion should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.*

Since the ALJ did not follow the correct legal standards in evaluating Dr. Reaven's opinion and the opinions of the other mental health professionals, I find that the decision rejecting any mental impairments is not supported by substantial evidence. Accordingly, I find that the case must be remanded for a proper consideration and weighing of the evidence.

On remand, as to Plaintiff's mental RFC the ALJ must articulate and adequately "assess the nature and extent of [Plaintiff's] mental limitations" to enable a correct and complete determination of her "RFC for work activity on a regular and continuous basis." 20 C.F.R. § 404.1545(b). Further, the ALJ should address whether Plaintiff can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'" *Washington*, 37 F.3d at 1440 (quotation omitted).

### 3. Whether There Is Substantial Evidence that Other Work Totaling 750, 245, and 150 jobs are Significant Numbers

Since I find that the ALJ did not properly assess Plaintiff's impairments, this may impact the validity of the RFC, the hypothetical question and the findings of the vocational expert as to jobs that Plaintiff can perform. Since the number of jobs the vocational expert found Plaintiff could do in Colorado was not particularly large, on

remand the ALJ should consider the factors set out in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). This would include an analysis of Plaintiff's capacity to travel to the assigned work.

IV.     CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding pursuant to 42 U.S.C. § 405(g).

Dated April 22, 2008

                          BY THE COURT:

                          s/ Wiley Y. Daniel
                          Wiley Y. Daniel
                          U. S. District Judge